UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | No. 1:16-CR-2075-LRS-1 |
|---|---|
| Plaintiff, | **FINDINGS OF FACT; CONCLUSIONS OF LAW; MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS AND EXCLUDING SPEEDY TRIAL ACT TIME** |
| vs. | |
| RENNIE RIOJAS ORTIZ, | |
| Defendant. | |

BEFORE THE COURT is Defendant's Motion to Suppress (ECF No. 29) in which Defendant seeks to suppress "all evidence obtained by virtue of the unlawful search of the garage adjoining the property at…Wapato, Washington on April 14, 2016, specifically to include an Italian 47 millimeter anti-tank cannon manufactured by Breda." The Motion is opposed and has been fully briefed after granting a continuance to allow the defense additional time for the matter (ECF Nos. 29, 41, 51, 54). An evidentiary hearing was held on July 13, 2017. Defendant appeared in custody with his attorney Richard Smith. The United States was represented by Assistant United States Attorney, Meghan McCalla. At the conclusion of the hearing the court directed the Government to produce certain discovery material and granted

ORDER - 1

the defense time to review the discovery prior to taking the matter under advisement on July 24, 2017. (ECF No. 58).

The court has considered the testimony, argument, pleadings, memoranda, and other materials submitted by the parties as well as the law and facts relating to this Motion. Being fully advised, the court renders the following Findings of Fact, Conclusions of Law, Memorandum Opinion, and Order.

## I.   FINDINGS OF FACT

### A. Investigation Prior to the Search

During the course of an investigation the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received information that Defendant possibly had large caliber weapons, including a cannon, a bazooka with potentially two live rounds, and a 50 caliber weapon. ATF did not know the precise location of the weapons.

### B. April 14, 2016 – Day of the Search

On April 14, 2016, ATF Special Agents ("S/A") Katrina Alconaba and Justin Schaeffer interviewed the Defendant at the Walla Walla state penitentiary. After he was Mirandized, the Defendant acknowledged awareness of a dangerous "big gun" that "looked nice," "but fucking scary," which required four or five people or a crane to move. The Defendant refused to disclose the location of the weapon.

Later the same day S/A Boyd Goodpastor obtained a letter from a cooperating individual (CI) believed to have been authored by the Defendant asking "Margie" to

ORDER - 2

make a "heavy piece of metal" in the garage available to certain individuals. Ex. 14. S/A Goodpastor and the CI drove to the location where the CI believed the weapon was stored at 351 Progressive Road in Wapato, Washington. A records check of the address indicated the owner of the residence was Marge Writtenberry.

S/A Goodpastor returned to the residence at 351 Progressive Road and knocked on the door. The young female who answered the door provided the phone number for Ms. Writtenberry. S/A Goodpastor called Ms. Writtenberry. He testified that he identified himself as an agent with the ATF and told her he had information that a large weapon was being stored on her property. She informed him that various persons were storing their property in the garage. She was asked about Rennie Ortiz and whether he had paid rent for storage, and she stated he had not. Ms. Writtenberry indicated the garage was locked, the Defendant did not have a key, and that only she and several family members, including her daughter, had keys. S/A Goodpastor asked for permission to search inside the garage and Ms. Writtenberry gave her verbal consent. S/A Goodpastor asked her to attend the search, but she indicated she could not, as she was at her son's residence several miles away watching children.

ATF made no attempt to obtain a warrant. After the agents obtained consent to search from Ms. Writtenberry, her daughter provided ATF with the key to search the garage. The daughter was invited to remain during the search, but she left shortly after it commenced.

ORDER - 3

Four ATF agents (Goodpastor, Alconaba, Watterson, Schaeffer) along with the Yakima County Sheriff's Office conducted the search of garage. Eleven color photos of the search area were admitted as evidence. Exs. 1-11. The garage consisted of 4 bays, 3 of which could be accessed through the main locked man door. The garage stored a large number of miscellaneous items. On the far wall of the third bay under a hose, tarp, and blanket, S/A Schaeffer located a long, wide, large item which narrowed near one end.

S/A Goodpastor testified that "there was a tarp over it, but when you looked at the tarp, immediately we knew what it was." Law enforcement pulled back the hose, tarp and blanket, and revealed the Italian-made 47 mm anti-aircraft anti-tank cannon on wheels. Adjacent to the cannon were numerous other items, including large furniture.

**C. Post-search**

The next day, April 15, 2016, S/A Goodpastor and Alconaba interviewed Ms. Writtenberry in person. She confirmed who had keys to the garage. S/A Goodpastor went over the letter written by the Defendant. She confirmed she was a family friend of the Defendant and she had allowed him to use the garage to store items without charge, but that she did not know what he had stored. Ms. Writtenberry signed the ATF receipt for the cannon. Ex. 12. Ms. Writtenberry subsequently granted ATF consent to search her property on two occasions to look for additional weapons.

ORDER - 4

Ms. Writtenberry testified that the Defendant was a welcome guest at her home, and had stayed overnight on occasion. She allowed the Defendant and others, to store items in her garage. As referenced above, she testified she was told law enforcement was looking for a weapon, consented to the search of the garage, and did not otherwise limit the scope of the search.

Defendant testified that he had known Ms. Writtenberry all of his life and when he wanted to go in the garage he would ask her to borrow the key. He recalled attempting to hide the cannon by covering it with the tarp, hose, blankets, and a sheet of white plastic (like a tarp) with a white Formica dresser on top. He tried to block the area by placing his other items, including a couch and mattress, adjacent to the weapon. He could not testify as to how it appeared on the day of the search.

## II.   DISCUSSION

The Government contends the Defendant lacks standing to object to the search of Ms. Writtenberry's property. Alternatively, the Government contends that Writtenberry's consent was sufficient to validate the warrantless search and that exigent circumstances also validate the search.

**A. Legitimate Expectation of Privacy/Standing**

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Fourth Amendment is not triggered unless law enforcement conducts a search or seizure in an area "in which there is a 'constitutionally protected reasonable expectation of privacy.' " *United States v. Van Poyck*, 77 F.3d 285, 290(9th Cir.1996) (*quoting New York v. Class*, 475 U.S. 106, 112, (1986) (*citing Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring))).

"To invoke Fourth Amendment protection, [one] must have both a subjective and an objectively reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 361 (1967). A property interest alone is insufficient. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1035 (9th Cir. 2012). "There must also be an objectively reasonable expectation of privacy in that property interest." *Id*. "In order to determine whether an expectation of privacy is reasonable, 'Katz posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?'" *Id*. (*quoting Cal. v. Ciraolo*, 476 U.S. 207, 211 (1986)). The necessity of a reasonable (i.e., legitimate) expectation of privacy is also referred to as Fourth Amendment "standing." *Minn. v. Carter*, 525 U.S. 83, 87 (1998).

ORDER - 6

Defendant's standing burden requires that he meet both *Katz* tests to demonstrate a legitimate expectation of privacy. Though Defendant can perhaps meet the subjective expectation test, he must show that viewed objectively, his expectation is justifiable or reasonable under the circumstances. In the absence of this expectation, Defendant's motion fails for lack of standing. *United States v. Pulliam*, 405 F.3d 782, 785–86 (9th Cir. 2005) (*citing Rakas v. Illinois*, 439 U.S. 128, 134 (1978)).

*1. **Expectation of Privacy in Private, Closed Containers***

It is undisputed that Defendant did not have exclusive control over or even access to the locked garage. The Defendant contends the question is not whether the Defendant had a legitimate expectation of privacy in the garage generally, but whether he could reasonably believe that the contents placed in the particular area of the garage under the blanket and tarp would remain private. Defendant claims the manner of covering the cannon provides a basis for the same Fourth Amendment privacy protection as other closed containers. (ECF No. 51 at 3)("[t]he manner in which the cannon *was protected from view of others* is the equivalent of a closed container.").

It is well established that a person may challenge a search of "private, closed containers" belonging to third parties but located in the area to be searched. *See United States v. Davis*, 332 F.3d 1163, 1167 (9th Cir.2003) (internal quotation omitted) ("[a] person has an expectation of privacy in his or her private, closed

ORDER - 7

containers and does not forfeit that expectation of privacy merely because the container is located in a place that is not controlled exclusively by the container's owner."); *United States v. Chadwick*, 433 U.S. 1, 13 (1977). By placing a possession inside a container, an individual manifests an intent that his possession be "preserve[d] as private," *Katz v. United States*, 389 U.S. 347, 351 (1961), and thus kept "free from public examination." *Chadwick*, 433 U.S. at 11.

The Supreme Court defines a container as "any object capable of holding another object." *New York v. Belton*, 453 U.S. 454 (1981)(emphasis added). *Belton* specifies that this includes "closed or open compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id*. at 460 n. 4. There are no federal decisions defining the outer limit of the container doctrine beyond this definition. However the Court has rejected a distinction between "worthy" and "unworthy" containers, instead finding that the Fourth Amendment protects every container that "conceals its contents from plain view." *United States v. Ross*, 456 U.S. 798, 822-23 (1982). In *U.S. v. Fultz*, 146 F.3d 1102 (9th Cir. 1998), the Ninth Circuit made clear that it is not the attributes of the container that matter, but rather how it functions in the particular setting based on privacy expectations. In *Fultz,* the court declared a homeless man had an expectation of privacy in closed cardboard boxes stored in segregated area of the garage of a house where he was staying intermittently.

The Government contends that the tarp and blanket cannot be considered a "private, closed container" for the reason that the weapon, though covered, is nothing like the traditional containers receiving Fourth Amendment such as the two containers in the cases cited by the Defendant, i.e., the *closed gym bag* under a bed containing a shotgun in *United States v. Davis*, 332 F.3d 1163 (9th Cir. 2003) and the *cardboard box* of gambling records under a bed in *United States v. Haydel*, 649 F.2d 1152 (5th Cir. 1981). In *Davis*, officers were told by the apartment tenant that Davis' belongings were stored in a bedroom where he slept, which officers then entered, found a black gym bag under the bed, and opened the bag discovering a shotgun. The court held that placing the gym bag under the bed was a clear manifestation of an expectation "that the contents would remain free form public examination." *Davis*, 332 F.3d at 1168. In *Haydel*, the court held that the defendant had a legitimate expectation of privacy in gambling records secreted in a box in his parents' home under their bed. *Haydel*, 649 F.2d at 1155. Significant factors in the case were that Haydel (1) had a key to the home thus giving him "unencumbered access"; (2) kept clothing there and occasionally stayed overnight, (3) conducted a "significant portion of his gambling activities at the home;" and (4) exhibited a subjective expectation that the contents of the box in which the records were kept were to remain private. *Haydel*, 649 F.2d at 1154-1155.

Unlike a suitcase, cardboard box, purse, or even a coat pocket, the blanket/tarp covering in this case does not meet the *Belton* definition of a container, i.e., an object capable of holding another object. Blankets/tarps are not objects that can be closed, latched or locked, nor do they ordinarily serve as one's "repository of personal effects." *United States v. Chadwick*, 433 U.S. 1, 12 (1977). They also do not meet the attribute that the objects contained inside be free from observation except by physical intrusion. S/A Goodpastor testified that the cannon's covering maintained its distinctive shape such that they immediately knew what it was. The court concludes the manner of covering is not akin to a "private, closed container" and the closed container line of cases does not support the Defendant's standing.

### *2. Expectation of Privacy in the Area Searched*

Defendant's ownership of the cannon is insufficient to give an expectation of privacy requisite to challenge its seizure. Thus, Defendant must demonstrate he has a legitimate expectation of privacy in the *place* in which the personal property is located. *Rawlings v. Kentucky*, 448 U.S. 98 (1980). Defendant's Motion initially suggested his expectation of privacy was based upon a promise contained in a letter he wrote to Ms. Writtenberry, after storage of the weapon began, stating: "Margie if you R reading this letter it means that I am locked up….You R going to get paid for your storage time. I came over a few times and you were not home….You should be getting paid before they move anything out of there."  (ECF No. 29, Ex. A). The

ORDER - 10

letter was never delivered to or received by Ms. Writtenberry. However, Defendant's supplemental brief and evidence presented at the evidentiary hearing instead claims he had an expectation of privacy in the area searched because the "area was segregated by furniture (couch) surrounding a [far] corner of the garage." (ECF 51 at 3).

To determine whether an expectation of privacy exists in the area an item was seized, courts consider various factors, such as the ability to exclude others, which weighs strongly (though it is not always necessary) in favor of a privacy interest. *See United States v. McCaster*, 193 F.3d 930, 933 (8th Cir.1999)(multiple factors have been recognized as relevant to the inquiry, including "whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises."). There is no exhaustive list of factors the court may consider as it is a fact-specific inquiry. The existence of a previous relationship with the owner of the premises, or the degree of acceptance into the household or premises is a helpful consideration. *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)("an overnight guest has a legitimate expectation of privacy in his host's home.").

The relevant facts here are (1) the Defendant was a lifetime friend of the owner and an occasional overnight guest at her home; (2) the Defendant was using the

ORDER - 11

garage for storage with permission of its owner, but had no possessory rights to the use of the garage; (3) Defendant had no right to exclude others from the garage and did not have a key; (4) Defendant knew that others were using the garage to store items; (5) Defendant grouped his belongings together using his furniture to partition the cannon away from other people's belongings; and (6) Defendant had refused to tell law enforcement where the cannon was located.

The Defendant's acceptance into the household of Ms. Writtenberry, his occasional overnight stays and attempt to keep the property's location hidden from law enforcement all point to a *subjective* expectation of privacy. However, the facts do not support an objectively reasonable expectation of privacy because of the lack of control: he had no ownership or other legal interest in the garage and had no access without permission and assistance from the owner. Accordingly, the Defendant had no reasonable basis to expect items placed therein were secure from search.

The same conclusion was reached in *United States v. Porter*, 701 F.2d 1158 (6th Cir. 1983). In *Porter*, the Defendant had been given permissive regular use of an airplane hangar and even placed a lock on the hangar entrance. The owner of the hangar testified that while he allowed the Defendant to use the hangar occasionally, he was given no control over it. The Defendant knew that his property was not the only property being stored in the hangar. The court held that the Defendant "clearly

ORDER - 12

ha[d] no privacy interest in the hangar," "nor any right to expect items located there to be secure within the meaning of the fourth amendment." *Porter*, 701 F.2d at 1165.

The fact that other people had access to the area (which the Defendant knew) also negates the objective reasonableness of the expectation of privacy. For example, in *United States v. Thornley*, 707 F.2d 622, 624-26 (1st Cir. 1983) (per curiam), the court held there was no reasonable expectation of privacy in an unlocked storage area in a friend's basement in a 3-story residence where defendant stored business records when defendant had no lease for storage area and was not a tenant. In *United States v. Pitt*, 717 F.2d 1334, 1336-38 (11th Cr.1983), *cert. denied,* 104 S.Ct. 1421 (1984), the court held that the Defendant had no reasonable expectation of privacy in a partitioned-off room (which the Defendant was not permissibly using and had padlocked) at the rear of garage of the defendant's girlfriend's apartment building when neither defendant nor girlfriend had possessory rights to exclude others and defendant knew others had access.

Based on the facts, the court concludes there was no objective, justifiable expectation of privacy in the garage area, and therefore Defendant lacks Fourth Amendment standing to contest the search.

**C. Consent**

Alternatively, even if the Defendant could demonstrate standing based upon a legitimate expectation of privacy, the Government contends Defendant assumed a

ORDER - 13

risk because Ms. Writtenberry "was the sole owner of the garage, with mutual use and joint access over the garage, and thereby had the actual and apparent authority to consent to its search." (ECF No. 54 at 3).  There is no dispute that Ms. Writtenberry had actual authority to consent to a search of the garage. A warrantless search does not violate the Fourth Amendment where police obtain voluntary consent to search from one who possesses common authority over the premises with the absent non-consenting target of the search. *United States v. Matlock*, 415 U.S. 164, 169 (1974).  To be valid, however, a consent search must be voluntary. The government bears the burden to show by a preponderance of the evidence that the consent to a warrantless search was voluntary," and "[v]oluntariness is a question of fact to be determined from all the surrounding circumstances." *States v. Kaplan*, 895 F.2d 618, 622 (9th Cir. 1990).  When viewing the surrounding circumstances, "there is no single controlling criterion." *Id*.  Consent is voluntary if, under the totality of the circumstances, it was "freely and intelligently given." *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011). An officer may not acquire entry by "misrepresenting the scope, nature or purpose of a government investigation." *United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990).

Defendant contends Ms. Writtenberry was not provided sufficient information to obtain voluntary consent to search the area or the Defendant's belongings. Specifically he contends the officers: (1) did not ask for consent to search the

ORDER - 14

Defendant's belongings; (2) withheld advising Writtenberry that Rennie Ortiz was the owner of the weapon they were searching for; (3) withheld information that Ortiz had written her a letter indicating that she would be paid for storage; and (4) did not engage Writtenberry in any discussion about the layout of the garage or the persons storing items in the garage besides herself. Defendant contends this invalidates her consent and the reasonableness of the agent's reliance upon it.

The court views efforts by the police to proceed outside the warrant procedure by procuring consent carefully and critically. Here, there was no misrepresentation or ruse used and importantly, both law enforcement and Ms. Writtenberry were already aware that others, including the Defendant, were storing their belongings in her garage. The agent asked for consent to search the garage for huge weapons. The fact that Ms. Writtenberry was given limited other information about the investigation or was ignorant of the specific ownership details of the weaponry, does not constitute deception as to purpose or undermine the consent. There is no evidence of coercion or duress or intimidation involved in the encounter. Moreover, the Defendant's refusal to provide the location of the weapons was not akin to a refusal to consent to the search the garage. Accordingly, the Defendant's lack of cooperation with the investigation does not operate to invalidate the express consent provided by the present garage's owner to the search.

Even if Ms. Writtenberry's consent to the search of the garage was somehow invalid under the Fourth Amendment, the Supreme Court has held that a "warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not." *Illinois v. Rodriquez,* 497 U.S. 177, 177 (1990).  The Court further noted in *Rodriquez* that the reasonableness of the government's decision to search is assessed by the "objective standard of whether the facts available at the moment would warrant a person of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriquez,* 497 U.S. at 177, 110 S.Ct. at 2796.  It appears that law enforcement acted with the understanding and belief that Ms. Writtenberry, as the owner of the garage, had the authority to consent to the search.  The officers were reasonable in this belief.

### D. Exigent Circumstances

Finally, the Government alternatively argues that irrespective of consent, the search was constitutionally permissible under exigent circumstances.  To invoke the exception, the Government must demonstrate both the existence of exigent circumstances and that there was no time to obtain a warrant before taking action to alleviate the exigencies.  *United States v. Good,* 780 F.2d 773, 775 (9th Cir. 1986).  Though the court accepted evidence and considered the parties' argument on this

issue, the court's decision herein on the issues of standing and consent renders it unnecessary to rule on the Government's exigent circumstances argument.

### III.  CONCLUSION AND ORDER

The Defendant's Motion to Suppress (**ECF No. 29**) is **DENIED** because the Defendant lacks standing to assert a Fourth Amendment challenge to the search of the garage or cannon.  Alternatively, the search was conducted pursuant to a valid consent of the property owner which is a constitutionally permissible exception to the Fourth Amendment's warrant requirement.  A ruling on the Government's exigent circumstances argument is unnecessary.

**IT IS FURTHER ORDERED** that pursuant to 18 U.S.C. § 3161(h)(1)(D) & (H), the time from April 26, 2017, the date of the filing of the Motion to Suppress to July 13, 2017, is hereby excluded from the Speedy Trial Act time calculations.

The District Court Executive is directed to enter this order and to provide copies to all counsel.

DATED this 26th day of July, 2017.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
SENIOR U.S. DISTRICT COURT JUDGE